UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

NINA COLBERT,

        Plaintiff,               Case No. 2:15-cv-13467
                                     District Judge Nancy Edmunds
v.                                     Magistrate Judge Anthony P. Patti

COMMISSIONER OF
SOCIAL SECURITY,

        Defendant.
_____/

**RECOMMENDATION TO GRANT DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT (DE 11) AND TO DENY PLAINTIFF'S MOTION
FOR SUMMARY JUDGMENT (DE 10)**

I.     **RECOMMENDATION**: For the reasons that follow, it is

**RECOMMENDED** that the Court **GRANT** Defendant's motion for summary

judgment (DE 11), **DENY** Plaintiff's motion for summary judgment (DE 10), and

**AFFIRM** the Commissioner's decision.

II.     **REPORT**

       Plaintiff, Nina Colbert, brings this action under 42 U.S.C. § 405(g) for

review of a final decision of the Commissioner of Social Security

("Commissioner") denying her applications for social security disability insurance

benefits ("DIB") and supplemental security income ("SSI"). This matter is before

the United States Magistrate Judge for a Report and Recommendation on

Plaintiff's motion for summary judgment (DE 10), the Commissioner's memorandum in opposition and cross motion for summary judgment (DE 11), and the administrative record (DE 7).

## A.    Background

In March 2013, Plaintiff filed applications for DIB and SSI, alleging she has been disabled since November 2010.  (R. at 178-208, 209-215.)  In a disability report she completed in January 2013, Plaintiff listed "reoccurrence tumor" as the sole condition which prevents her from working.  (R. at 241.)  Notably, Plaintiff did not list any alleged mental impairments or disabilities in that report or her applications for relief.

Plaintiff's applications were each denied (R. at 105-106) and she sought a *de novo* hearing before an administrative law judge ("ALJ").  (R. at 145-146.)  ALJ David Neumann held a hearing on April 7, 2014.  (R. at 38-74.)  On May 2, 2014, ALJ Neumann issued an opinion which found Plaintiff to not be disabled.  (R. at 24-33.)   The Appeals Council denied Plaintiff's request for review on August 4, 2015.  (R. at 2-4.)  ALJ Neumann's decision thus became the Commissioner's final decision.  Plaintiff then timely commenced the instant action.

## B.    Plaintiff's Medical History

In November 2010, a lesion was removed from Plaintiff's left jawbone.  (R. at 340.)  In a November 2010 health history, Plaintiff checked a box indicating she

had no psychiatric problems.  (R. at 455.)  In March 2013, Plaintiff underwent a left mandicular tumor resection. (R. at 398.)  That surgery required Plaintiff's left jaw to be reconstructed by Robert John, DDS.  (R. at 408.)  A March 2013 patient history form from the Detroit Medical Center contains a checked box indicating Plaintiff was "negative" for psychiatric issues.  (R. at 361.)  Similarly, other portions of the medical record indicate that Plaintiff had normal psychiatric exams. (*See, e.g.,* R. at 524 (June 2011 notes of Steven Guggino, M.D., indicating Plaintiff was cooperative and had an appropriate mood and affect); 574 (October 2011 notes of St. John Hospital and Medical Center indicating Plaintiff's psychiatric exam was "WDL" (presumably "within defined limits")).  Also, records show that Plaintiff missed numerous appointments with providers from late 2011 through 2013. (R. at 436-438, 614-615.)

### C.   Hearing Testimony

#### 1.  Plaintiff's Testimony

At the April 7, 2014 hearing, Plaintiff testified that she was thirty-five years old and lived with her five minor children.  (R. at 41-42.)  Plaintiff is five feet, three inches tall and weighs 150 pounds, having lost sixty-five pounds since November 2010 due to her "condition."  (R. at 42.)  Plaintiff had a tumor removed from her left jawbone in November 2010 and has had subsequent surgical procedures.  (R. at 43.)  Plaintiff experiences pain on the "whole left side" of her

face, which she quantifies as being a nine out of ten without pain medication, and a six out of ten with pain medication.  (R. at 43-44.)

When asked what, other than pain, prevents her from working, Plaintiff responded "[t]he nauseated [sic], the sickness, the side effects from the medication."  (R. at 44.)  When asked if the nausea was "because of the medication[,]" Plaintiff somewhat nonresponsively answered "[y]es, the drowsiness, the forgetfulness."  (R. at 44.)  Plaintiff responded in the affirmative when asked if she has followed the advice of her doctors/has been compliant in her treatment.  (R. at 44.)

Plaintiff goes to bed around 7:30 or 8:00 p.m. and stays in bed until about 7:00 a.m.  (R. at 44.)  Plaintiff was asked if she takes naps during the day, to which she responded in relevant part:

> No.  I try to, because the pain, so my pain medicine makes me—I have to lay down with my pain medication and my medication for anxiety or depression, what's that, the Neurontin that I take makes me drowsy.

(R. at 45.)   Plaintiff later, somewhat contradictorily, stated that she naps about five days per week, for about two hours at a time.  (R. at 45.)

Plaintiff then was asked about what her typical morning is like, and she stated she drinks an Ensure, takes a pain pill and tries to help her kids get ready for school.  (R. at 45.)   However, her partner (sometimes referred to in the record as

4

her fiancé) helps the youngest children get dressed, and he also takes the kids to school, where they eat breakfast.  (R. at 45-46.)

Plaintiff "can do self-hygiene" but stated that she does not go shopping anymore.  (R. at 46-47.)  Plaintiff then clarified that she goes to the grocery store about once per month but goes to no other stores as the temperature change in stores triggers pain in her face.  (R. at 47.)  Plaintiff makes sandwiches and soups, but her partner and one of her children do the laundry, one of her children does the dishes, one of her children and/or her partner also do the vacuuming, sweeping and dusting and take care of Plaintiff's two dogs.  (R. at 47-48.)  Though she does not do any outside chores, like cutting the grass, Plaintiff does watch television daily, and spends about thirty minutes per day on Facebook.  (R. at 48-49.)  Plaintiff does not do any daily reading, but "tr[ies] to watch at least two movies a day."  (R. at 49.)

The ALJ then asked what sorts of things Plaintiff does to assist with her children, such as helping with homework, and Plaintiff nonresponsively answered that she does not go out in public much because "[w]ith the permanent nerve damage my saliva comes out unexpectedly out of my mouth, and that's embarrassing . . . ."  (R. at 49.)  When again asked what activities she does with her children, Plaintiff stated that she helps them with their homework but does not participate in activities or outings, such as parent-teacher conferences.  (R. at 50.)

Shortly thereafter, Plaintiff's attorney asked if Plaintiff's jawbone had been removed, to which Plaintiff responded "[c]orrect." (R. at 50.) When asked to describe her pain, Plaintiff stated that she has muscle spasms that "are like charley horses." (R. at 50.) Plaintiff suffers migraines stemming from her jaw discomfort seven days per week. (R. at 51.) Plaintiff is supposed to use a Therabite machine ten times per day for twenty minutes at a time to help get her mouth to open more, but due to pain she uses it only once or twice per day. (R. at 51-52.)

Shortly thereafter, the following exchange occurred between Plaintiff and her counsel:

> Q  Okay. And as far as you—you talked about anxiety and depression, what's going on there?
>
> A  The depression is insecurity [as] far as I feel disfigured, the way certain words that I try to say, or the way my face moves when I am talking. The pain is depression because I can't participate or be involved in a social life like I used to. Not being able to eat on that side of my face, not being able to taste my food, not having no [sic] feeling on that, on the left side of my face, just numbness all the time[,] that's uncomfortable.

(R. at 53.) Plaintiff then stated that she can smell food, but cannot taste it, and went on to say that she had portions of her tongue and seven and a half inches cut out of her jawbone. (R. at 53.)

Later, Plaintiff was asked about the effects of the drowsiness and forgetfulness ostensibly stemming from her medications, and she stated she forgets to feed and provide medicine to her children unless reminded, and feels drowsy all

day long.  (R. at 56-57.)  Plaintiff takes her pain medication daily, but one or two days per week she takes only one pill.  (R. at 57.)  However, Plaintiff takes the Neurontin only on weekends because it causes "drowsiness I can't control . . . ." (R. at 57-58.)

The ALJ then resumed questioning Plaintiff, in response to which she stated she: can sit about two to two and one-half hours without having to get up and can stand about twenty minutes before becoming dizzy (R. at 58); cannot walk at all when she takes her medication, but can walk about fifteen minutes if she has not taken it (R. at 58-59); and, can lift things weighing ten pounds or less, like a can of coffee or bag of potatoes, "with no problem."  (R. at 59.)

### 2.  Vocational Expert's Testimony

Vocational Expert ("VE") Pauline Pegram classified Plaintiff's prior work as a medical clerk and data entry clerk, both of which are sedentary jobs.  (R. at 60.) The ALJ then asked the VE whether a person with Plaintiff's age, education and work experience who "would require work which is simple, routine, and repetitive . . . [and] who would be limited to occupations which do not require frequent verbal communication" could perform Plaintiff's prior relevant work.  (R. at 60.) The VE ultimately answered in the negative.  (R. at 64.)  The ALJ then asked if there were other jobs such a person could perform, and the VE listed jobs such as hand packager (medium and unskilled, with 40,600 jobs nationally and 2,500 in

Michigan), cleaner/housekeeper (light and unskilled, with 153,300 jobs nationally and 5,000 in Michigan) and document preparer (sedentary and unskilled with 44,500 jobs nationally and 1,800 jobs in Michigan).  (R. at 64-66.)

The ALJ then asked the VE to assume the previous hypothetical's parameters, but to add the following limitations:  "lift or carry 10 pounds frequently and 20 pounds occasionally; . . . stand or walk with normal breaks for a total of six hours in an eight-hour workday; . . . [and only occasional] climbing ramps and stairs, balancing, stooping, kneeling, crouching or crawling."  (R. at 67.) The VE stated that such a person could not perform work at the medium level, but could perform the aforementioned cleaner and document preparer jobs.  (R. at 68.) When asked by Plaintiff's counsel, the VE stated that it would be work preclusive if an individual missed more than one workday per month due to pain or side effects of medications.  (R. at 69-71.)

### D.  The Administrative Decision

In his May 2, 2014 decision, the ALJ first concluded that Plaintiff met the insured status requirements through December 31, 2014.  (R. at 26.)  At **Step 1** of the sequential evaluation process,[1] the ALJ found that Plaintiff had not engaged in substantial gainful activity since the November 2010 alleged onset date.  (R. at 26.)

---

[1] Social Security Regulations require ALJs to resolve a disability claim through a five-step sequential evaluation of the evidence.  *See* 20 C.F.R. §404.1520(a)(4). Although a dispositive finding at any step terminates the ALJ's review, *see Colvin*

At **Step 2**, the ALJ found that Plaintiff had the following severe impairment:

"status post resection and reconstruction of left mandible . . . ."  (R. at 26.)  At

**Step 3**, the ALJ found that Plaintiff did not have an impairment or combination of

impairments that met or medically equaled one of the listed impairments described

in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (R. at 27.)

Prior to undertaking Step 4, the ALJ evaluated Plaintiff's residual functional

capacity ("RFC")[2] and determined that she could perform medium work,[3] with the

---

*v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), if fully considered the sequential
review considers and answers five questions:

1. Is the claimant engaged in substantial gainful activity?
2. Does the claimant suffer from one or more severe impairments?
3. Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1?
4. Considering the claimant's residual functional capacity, can the claimant perform his or her past relevant work?
5. Considering the claimant's age, education, past work experience, and residual functional capacity, can the claimant perform other work available in the national economy?

*See* 20 C.F.R. §404.1520(a)(4); *see also Henley v. Astrue*, 573 F.3d 263, 264 (6th Cir. 2009); *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).

[2] The claimant's "residual functional capacity" is an assessment of the most the claimant can do in a work setting despite his or her physical or mental limitations. 20 C.F.R. §404.1545(a); *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 239 (6th Cir. 2002).

[3] "Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds. If someone can do medium work . . . he or she can also do sedentary and light work."  20 C.F.R. §404.1567(c).

following restrictions: "work is limited to simple, routine and repetitive tasks . . . [and] to occupations that do not require frequent verbal communication." (R. at 27.)   At **Step 4**, the ALJ concluded that Plaintiff could not perform her past relevant work.  (R. at 31.)  At **Step 5**, the ALJ concluded that Plaintiff was capable of performing other jobs that exist in significant numbers in the national economy. (R. at 31-32.)  Specifically, the ALJ found persuasive the VE's testimony that an individual with Plaintiff's age, education, work experience and RFC could work as, *inter alia*, a hand packager, cleaner and document preparer.  (R. at 32.)  The ALJ therefore concluded that Plaintiff was not disabled under the Social Security Act.  (R. at 33.)

## E.  Standard of Review

The District Court has jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g).  When reviewing a case under the Social Security Act, the Court "must affirm the Commissioner's decision if it 'is supported by substantial evidence and was made pursuant to proper legal standards.'"  *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007)); *see also* 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . .").  Under this standard, "substantial evidence is defined as 'more than a scintilla of evidence

but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers*, 486 F.3d at 241 (quoting *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)). In deciding whether substantial evidence supports the ALJ's decision, the court does "not try the case *de novo*, resolve conflicts in evidence or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Rogers*, 486 F.3d at 247 ("It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant."). Furthermore, the claimant "has the ultimate burden to establish an entitlement to benefits by proving the existence of a disability." *Moon v. Sullivan*, 923 F.2d 1175, 1181 (6th Cir. 1990).

Although the substantial evidence standard is deferential, it is not trivial. The Court must "'take into account whatever in the record fairly detracts from [the] weight'" of the Commissioner's decision. *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)). Nevertheless, "if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)); *see also* 42 U.S.C. § 405(g) ("The findings of the Commissioner of

Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . .").  Finally, even if the ALJ's decision meets the substantial evidence standard, "'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'"  *Rabbers*, 582 F.3d at 651 (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

## F.  ANALYSIS

Plaintiff raises five issues.  First, she contends the ALJ "failed to comply with 20 C.F.R. §404.1503(e) by neglecting to obtain a psychiatric consultative evaluation when there was evidence indicating the existence of a mental impairment."  (DE 10 at 6.)  Second, she argues "there is absolutely no support for the ALJ's RFC Assessment as the record is devoid of any RFC Assessments from any physicians whatsoever."  (*Id.*)  Third, she alleges "the ALJ erred by failing to comply with SSR 96-8p when he did not include the required 'function-by-function' assessment."  (*Id.*)  Fourth, she contends the ALJ "failed to even discuss, much less consider, the side effects from the Plaintiff's many medications on her ability to work, as required."  (*Id.*)  Finally, she argues "the ALJ erred by failing to comply with SSR 96-7p in discrediting the Plaintiff for her failure to follow prescribed treatment without first considering her explanations for this lack of

treatment." (*Id.*)  I will devote a separate sub-section in this Report to each of these arguments.

### 1.  Psychiatric Exam

20 C.F.R. §404.1503(e) provides in relevant part that:

> An initial determination by a State agency or the Social Security
> Administration that you are not disabled (or a Social Security
> Administration review of a State agency's initial determination), in
> any case where there is evidence which indicates the existence of a
> mental impairment, will be made only after every reasonable effort
> has been made to ensure that a qualified psychiatrist or psychologist
> has completed the medical portion of the case review and any
> applicable residual functional capacity assessment.

Plaintiff contends the ALJ's failure to obtain a mental health exam violated that regulation because "medical documentation shows that Plaintiff is obtaining medications for anxiety and depression and Plaintiff testified to having significant symptoms from her depression . . . ." (DE 10 at 13)

As the Commissioner accurately notes, however, Plaintiff offers no medical/psychiatric evidence to buttress her newfound contention at the hearing that she suffers from mental health impairment(s).  Plaintiff did not list any mental impairment(s) in her applications for benefits, nor does the record contain evidence that she received treatment for mental health concerns.  To the contrary, as previously discussed, the record contains evidence of normal psychiatric examinations.  (*See* R. at 361, 524, 574.)  In addition, the third party function report prepared by Plaintiff's fiancé does not list Plaintiff as having any mental

health concerns—instead that report indicates Plaintiff has no issues involving her memory, concentration, understanding, getting along with others or completing tasks.  (R. at 237.)  Further, in the fiancé's own apparent handwriting, the report describes her as following written instructions "very well" and following spoken instructions "very well."  (*Id.*)

Although her brief argues that the ALJ erroneously "failed to comply with 20 C.F.R. 404.1503(e)" even "[d]espite the fact that medical documentation shows that Plaintiff is obtaining medications for anxiety and depression," she does not bother to provide a citation for the Court to ascertain which medical documentation she relies upon.  (DE 10 at 13.)  In fact, her only citations on this point in the fact section of her brief are to her own subjective hearing testimony. (DE 29 at 9-10.) The Court will not search this 770 page record with a fine-toothed comb to develop arguments for Plaintiff.  *See, e.g.*, *Davis v. Comm'r of Soc. Sec.*, 2016 WL 4445774, at *10 (E.D. Mich. July 29, 2016) (Patti, M.J.) ("Having already concluded that the treating physician's…opinions were properly discounted, the Court has no affirmative duty to go through the state agency reviewer's (or the consultative examiner's) findings with a fine-toothed comb to verify consistency with the 379-page record, particularly where Plaintiff has failed to use the adversarial process to point out any inconsistencies."), *report and recommendation adopted* at 2016 WL 4429641 (E.D. Mich. Aug. 22, 2016) (Leitman, J.).  Even if

such a record exists, taking medication for anxiety and depression is not necessarily, in and of itself, strong evidence of having a disability, let alone conclusive evidence.  See, e.g., *Burns v. Massanari*, 16 Fed. App'x 522, 523  (8th Cir. 2001) ("We conclude the administrative law judge (ALJ) correctly evaluated the severity of Burns's depression and associated functional limitations. *Burns did not allege disabling depression in her applications; and although she was treated for depression, took prescription and antidepressants, and attended counseling, no treating physician indicated her depression was disabling*, her therapist opined her depression was somewhat situational in nature, and a consultative neuropsychiatrist found no specific abnormalities other than a mildly depressed mood.") (emphasis added).  It is not uncommon to take such medications in this country, and countless numbers of duly employed workers and students are on them.  Plaintiff's broad assertion that she "is obtaining medications for anxiety and depression," without any explanation as to dosage, date of prescription, identity of prescribing physician, history of treatment, effectiveness of the treatment or citation to a historical record of the underlying condition fails to meet her burden of coming forward with objective evidence at Steps 1 through 4 of the sequential process, and does not establish an error by the ALJ in the instant matter. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997) ("during the first four steps, the claimant has the burden of proof[.]").

Moreover, Plaintiff, who was represented by counsel, did not seek a mental health examination at any point prior to or after the hearing, nor did she seek to amend her application(s) for benefits to reflect any mental health impairment(s). Plaintiff, therefore, asks the Court to find the ALJ erred by not *sua sponte* ordering a mental health examination, based solely on her subjective complaints at the hearing.

Other than her generic testimony at the hearing that she was depressed and was taking medication, Plaintiff points to *nothing* in the record to show the existence of a mental impairment. A subjective recitation of symptomology, standing alone, is insufficient to entitle a claimant to benefits. *See, e.g.,* S.S.R. 96-4p, 1996 WL 374187, at *1 (July 2, 1996) ("No symptom or combination of symptoms can be the basis for a finding of disability, no matter how genuine the individual's complaints may appear to be, unless there are medical signs and laboratory findings demonstrating the existence of a medically determinable physical or mental impairment."). Indeed, Plaintiff's counsel has unsuccessfully raised the same argument about an ALJ's failure to order a mental health exam previously in this Court. Specifically, Magistrate Judge Hluchaniuk concluded as follows:

> *In this case, plaintiff points to no medical records to support her claim of a mental impairment, offers no diagnosis by an acceptable medical source, and did not claim that she was disabled because of any mental impairment.* Plaintiff argues that the ALJ should have had

her examined by a mental health professional based on her testimony at the hearing that she had anxiety and depression. However, the undersigned does not find this testimony to be a compelling reason for the ALJ to have ordered a psychological or psychiatric examination of plaintiff. While the ALJ does bear some obligation to develop the record, in this case, plaintiff was regularly seeing a multitude of health care practitioners and was represented by counsel at the hearing. As the Commissioner points out, plaintiff's medical records evidence a stated lack of any unusual depression or anxiety. *Plaintiff's testimony does not obviate her own obligation to establish that she had a medically determinable impairment.* Under these circumstances, the undersigned finds no error in the ALJ's decision.

*White v. Colvin*, 2015 WL 5210243, at *11-12 (E.D. Mich. Sept. 3, 2015)

(Hluchaniuk, M.J.) (citation and paragraph break omitted, emphasis added), *report and recommendation adopted at* 2015 WL 5210243, at *1-2 (Levy, J.).  Likewise, I find no error in this regard and the ALJ's decision should be affirmed.

### 2.  RFC Assessment

Plaintiff next asserts the record is "devoid" of the opinions of any physicians upon which the ALJ could have properly based his RFC assessment.  (DE 10 at 13.)  However, Plaintiff, as the party seeking benefits, "bears the ultimate burden to prove by sufficient evidence that she is entitled to disability benefits."  *Trandafir v. Comm'r of Soc. Sec.*, 58 Fed. App'x 113, 115 (6th Cir. 2003).  Notably, Plaintiff does not point to any specific evidence in the record supporting a more restrictive RFC than that assessed by the ALJ.  Indeed, though represented by counsel, Plaintiff did not ask the ALJ to order additional medical evidence to be adduced.  It was Plaintiff's burden, not the Commissioner's, to provide evidence showing an

RFC more restrictive than that found by the ALJ. *See, e.g., Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 391 (6th Cir. 1999) ("Bearing in mind this rationale behind the shifting of the burden of proof in disability cases, we reject plaintiff's contention that once the burden of proof shifts to the Commissioner at step five, the Commissioner is then required to prove a claimant's Residual Functional Capacity. The determination of a claimant's Residual Functional Capacity is a determination based upon the severity of his medical and mental impairments. This determination is usually made at stages one through four, when the claimant is proving the extent of his impairments. *If a claimant does not secure an official 'Residual Functional Capacity' assessment by a medical or psychological examiner, and simply relies on other evidence to prove his impairments, it does not follow that the Commissioner subsequently must provide the RFC assessment at step five*.") (emphasis added).

Moreover, the ALJ's RFC determination is supported by substantial evidence. For example, a March 2013 consultative exam performed by Kalyani Ballapuram, M.D., showed, *inter alia*, that Plaintiff had a normal musculoskeletal exam (normal range of motion, normal strength and no tenderness) and a normal neurologic exam (alert, oriented, normal motor function, no focal defects, etc.). (R. at 394.) In addition, in a function report she completed in January 2013, Plaintiff herself stated that she was able to perform a wide variety of activities of

daily living, such as doing laundry, cooking, sweeping, shopping weekly for a few hours, searching for work, taking care of her pets and taking care of her children. (R. at 260-264.)   *See, e.g., Toombs v. Colvin*, 2015 WL 4389781, at *19 (M.D. Tenn. July 15, 2015) ("An ALJ may, however, consider the claimant's household and daily activities when evaluating allegations of pain or ailments."), *report and recommendation adopted at* 2015 WL 4647634 (M.D. Tenn. Aug. 5, 2015). Also, as will be discussed in greater detail later, the ALJ was permitted to take Plaintiff's repeated failure to keep medical appointments into account.

Finally, this Court has rejected this same basic argument before, also in a case involving Plaintiff's counsel.  Specifically, Judge Murphy held as follows:

> Spuhler contends that, in the absence of any medical opinion on the record, the ALJ could not determine her RFC. Social Security Regulations provide that "[i]f any of the evidence in your case record, including any medical opinion(s), is inconsistent, we will weigh the relevant evidence and see whether we can determine whether you are disable[d] based on the evidence we have." 20 C.F.R. § 416.920b(b). This regulation allows the ALJ to weigh all of the evidence when no medical opinion is given controlling weight. . . .
>
> Spuhler had the burden to demonstrate what she was capable or not capable of doing. Yet, the record lacks any psychological opinion detailing her limitations. As in *Her*, the ALJ was justified in examining all of the evidence and determining Spuhler's capacity, notwithstanding the absence of a conclusive medical opinion.

*Spuhler v. Colvin*, 2014 WL 4856153, at *4-5 (E.D. Mich. Sept. 30, 2014) (citing *Her*, 203 F.3d at 390). In short, the ALJ's RFC determination is supported by substantial evidence and, consequently, should be affirmed.

### 3. Function-By-Function Analysis

Plaintiff next argues that the ALJ's RFC determination is fatally flawed because he did not provide a function-by-function analysis, which Plaintiff asserts is required by S.S.R. 96-8p, 1996 WL 374184 (July 2, 1996). In relevant part, S.S.R. 96-8p provides that "[t]he RFC assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis . . . . Only after that may RFC be expressed in terms of the exertional levels of work, sedentary, light, medium, heavy, and very heavy." *Id.* at *1.

Plaintiff's argument on this issue misinterprets the dictates of the ruling. "'Although a function-by-function analysis is desirable, S.S.R. 96-8p does not require ALJs to produce such a detailed statement in writing.'" *Delgado v. Comm'r of Soc. Sec.*, 30 Fed. App'x 542, 547 (6th Cir. 2002) (quoting *Bencivengo v. Comm'r of Soc. Sec.*, 251 F. 3d 153 (table) (3d Cir. Dec. 19, 2000)). Here, although the ALJ did not explicitly consider each of Plaintiff's alleged functional limitations and their potential impact on her ability to do work, his analysis contains a thorough examination of the entire record and explanation of her

20

exertional and nonexertional abilities (i.e., her ability to perform work at the medium level). No more is required. *See, e.g., Rudd v. Comm'r of Soc. Sec.*, 531 Fed. App'x. 719, 729 (6th Cir. 2013) ("Rudd contends that the ALJ failed to perform a function-by-function assessment of his RFC, as required by 20 C.F.R. §§ 404.1545, 416.945, and explained in SSR 96–8p. . . . . We find that the ALJ's RFC assessment complied with SSR 96–8p. The ALJ fully specified Rudd's exertional and nonexertional abilities. This argument must be rejected.").

### 4. Side Effects

Plaintiff's penultimate argument is that the ALJ's decision is fatally flawed because it does not contain a discussion of the side effects of her medications. Although an ALJ is required to take into account the side effects from any medications a claimant is experiencing, I agree with the Commissioner that the ALJ fulfilled that requirement.[4]

In his RFC analysis, the ALJ noted Plaintiff's contention that her medications cause her to be drowsy, forgetful and nauseated. (R. at 27-28.)

_____

[4] *See, e.g.,* S.S.R. 96-7p, 1996 WL 374186, at *3 (July 2, 1996). S.S.R. 96-7p was superseded by S.S.R. 16-3p, effective March 16, 2016. However, S.S.R. 16-3p retains the general requirement that side effects shall be considered. 2016 WL 1119029, at *7 (March 16, 2016) ("In addition to using all of the evidence to evaluate the intensity, persistence, and limiting effects of an individual's symptoms, we will also use the factors set forth in 20 CFR 404.1529(c)(3) and 416.929(c)(3). These factors include . . . [t]he type, dosage, effectiveness, and side effects of any medication an individual takes or has taken to alleviate pain or other symptoms . . . .").

Nonetheless, the ALJ later concluded that "the record fails to indicate any credible or significant side effects from medications, which would further affect the remaining residual functional capacity." (R. at 31.)

Plaintiff points to no specific objective medical evidence to support her contention that she experiences significant side effects. This failure is fatal to her argument. *See, e.g., Farhat v. Sec'y of Health and Human Servs.*, 972 F.2d 347 (Table), 1992 WL 174540, at *3 (6th Cir. July 25, 1992) ("In addition, Farhat's allegations of the medication's side-effects must be supported by objective medical evidence. There is no objective medical evidence supporting Farhat's allegations that the medicine makes him so drowsy and requires him to rest to such an extent that he is unable to work . . . . Therefore, in light of the lack of objective medical evidence supporting Farhat's claims of side-effects, the ALJ's findings that Farhat is not disabled and can perform other work are supported by substantial evidence.") (citations omitted).

In addition, the ALJ was not required to accept Plaintiff's subjective complaints of drowsiness, and other side effects. *See, e.g., Biermaker v. Comm'r of Soc. Sec.*, 2016 WL 7985329, at *8 (E.D. Mich. June 13, 2016 (Davis, M.J.) ("The ALJ is not required to accept the testimony of a claimant if it conflicts with medical reports, the claimant's prior statements, the claimant's daily activities, and other evidence in the record."), *report and recommendation adopted at* 2016 WL

5027593 (Sept. 20, 2016) (Borman, J.). Indeed, the credibility of the Plaintiff is an area reserved to the ALJ, provided that the ALJ's determination is supported by substantial evidence. *See, e.g., Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 536 (6th Cir. 2001) ("A circuit court . . . may not review a determination of credibility. It is for the Secretary and his examiner, as the factfinders, to pass upon the credibility of the witnesses and weigh and evaluate their testimony.") (quotation marks, citation and alteration omitted). "Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among the medical reports, claimant's testimony, and other evidence." *Walters v. Comm'r Soc. Sec*., 127 F.3d 525, 531 (6th Cir. 1997). Plaintiff has not directly challenged the ALJ's credibility findings on appeal.

Moreover, Plaintiff's hearing testimony conflicts with, among other things, the function reports prepared by Plaintiff and her fiancé—each of which explicitly declined to assert, *inter alia*, that Plaintiff suffers from any memory problems. *See* R. at 237 (fiancé's report leaving un-checked a box asking if Plaintiff suffers from memory problems); 265 (Plaintiff's report also leaving unchecked a box asking if she suffers from memory problems). In addition, a history report prepared at the Detroit Medical Center in March 2013 shows Plaintiff to be negative for neurological problems, including memory-related issues, and for gastrointestinal issues, including nausea. (R. at 361.)

23

The ALJ's rejection of Plaintiff's subjective complaints related to alleged side effects is supported by substantial evidence.  Consequently, the ALJ's decision should not be disturbed.

### 5.  Missed Appointments

After listing numerous scheduled appointments Plaintiff failed to keep, the ALJ remarked that "[t]he failure of the claimant to seek examination and treatment for the condition and follow doctor's advice reflects poorly on the credibility of the claimant and the assertions that the condition is disabling."  (R. at 29.)  Similarly, later in his opinion the ALJ stated "[t]he claimant stated at the hearing that she has followed the recommendations of her doctor and complied with his treatment protocols.  However, the medical record shows that the claimant is often noncompliant and does not attend scheduled doctor appointments."  (R. at 30.)

Plaintiff's final argument is that the ALJ "erred by failing to comply with SSR 96-7p in discrediting the Plaintiff for her failure to follow prescribed treatment without first considering her explanations for this lack of treatment."  (DE 10 at 18) (emphasis omitted).[5]  An ALJ may consider a claimant's failure to

---

[5] Though, as previously mentioned, S.S.R. 96-7p was superseded in March 2016 by S.S.R. 16-3p, the new ruling contains a similar discussion of how the Social Security Administration will address a claimant's failure to follow prescribed treatment.  *See* 2016 WL 1119029, at *8-9.  Since the outcome would be the same under either S.S.R., and because S.S.R. 96-7p was in effect at the time the ALJ issued his ruling and is the ruling discussed in the parties' motions, for convenience's sake the Court will analyze the matter using S.S.R. 96-7p.

comply with treatment as a reason to discount credibility. *Sias v. Sec'y of Health & Human Servs.*, 861 F.2d 475, 480 (6th Cir.1988) (concluding that the ALJ properly discounted the claimant's credibility where he failed to follow prescribed treatment); S.S.R. 96–7p, 1996 WL 374186, at *8 (noting that "the individual's statements may be less credible if . . . the medical reports or records show that the individual is not following the treatment as prescribed and there are no good reasons for this failure."). However, S.S.R. 96-7p cautions that an ALJ may not draw:

> any inferences about an individual's symptoms and their functional effects from a failure to seek or pursue regular medical treatment without first considering any explanations that the individual may provide, or other information in the case record, that may explain infrequent or irregular medical visits or failure to seek medical treatment.

1996 WL 374186, at *7. For example, the ALJ should consider the claimant's explanation where the individual "may be unable to afford treatment and may not have access to free or low-cost medical services." *Id.  See also McKnight v. Sullivan,* 927 F.2d 241, 242 (6th Cir. 1990) (agreeing with the conclusion that a "condition that is disabling in fact continues to be disabling in law," when the claimant "cannot afford prescribed treatment or medicine and can find no way to obtain it.") (internal quotation marks and citations omitted).

Notably, close scrutiny of her motion reveals that Plaintiff does not explicitly contend that her numerous "no shows" were because she lacked

insurance.  Instead, Plaintiff curiously remarks only that the missed appointments were "*probably* due to a lack of insurance."  (DE 10 at 21) (emphasis added).  Moreover, Plaintiff stated at the hearing that she complied with the treatment recommended by her doctor (R. at 44), testimony which stands in direct contrast to the medical record showing her having missed *numerous* appointments from 2011-2013.  (R. at 436-438, 614-615).  It would have behooved Plaintiff, therefore, to offer an explanation to the ALJ for her persistent failure to appear.  Nonetheless, despite being represented by counsel, Plaintiff offered *no explanation(s) whatsoever* to the ALJ, and instead only asserted that she was compliant with recommended treatment.  Thus, Plaintiff now contends the ALJ erred by relying on what the record incontrovertibly depicts.

Even accrediting counsel's speculation as to why Plaintiff missed appointments, the ALJ did not ignore her purported lack of insurance in his opinion.  To the contrary, he noted that Exhibit 4F in the record showed Plaintiff lacked insurance (R. at 29), and stated that "[t]he claimant's lack of insurance *has been considered* regarding any issues of noncompliance or lack of treatment."  (R. at 29-30) (emphasis added).[6]  This "consideration" is all that is required.  *See, e.g.,*

---

[6] Plaintiff relies on two cases from Washington to support her argument.  First, those cases are certainly not binding in this District.  Moreover, they are distinguishable.  First, Plaintiff cites *Diego v. Colvin*, 31 F. Supp. 3d 1183 (E.D. Wash. 2014), where the court found that the ALJ failed to consider a claimant's explanation that he did not comply with treatment because of an insurance issue.

*Issa v. Comm'r of Soc. Sec.,* 2016 U.S. Dist. LEXIS 110827, *38-39 (E.D. Mich.

May 24, 2016) (Patti, M.J.) ("[T]he ALJ did first consider Plaintiff's inability to

procure funds or adequate insurance before drawing any inferences from the

infrequency of Plaintiff's medical visits or failure to seek medical treatment.

[Under SSR 96-7p] [t]his 'consideration' is all that is required, and here it was

explicitly given."), *report and recommendation adopted at* 2016 U.S. Dist. LEXIS

110577 (E.D. Mich. Aug. 19, 2016) (Cleland, J.).

 Unfortunately, the ALJ referred only to Exhibit 4F without providing a

pinpoint cite.  That exhibit is sixty-seven pages long, and primarily consists of the

treatment records of Dr. Lawrence Musser, a Florida dentist, from late 2010

through May 2011.  (R. at 455-521.)  The only references to insurance therein

appear to be three notes from April-May 2011 reflecting Plaintiff having difficulty

finding a provider who will accept her Medicaid plan.  (R. at 514-516.)  However,

the record shows that Plaintiff had medical insurance through a company called

---

Here, however, the ALJ explicitly considered Plaintiff's purported lack of
insurance.  Similarly, Plaintiff's reliance upon *Mittlestadt v. Astrue*, 2011 WL
2694594, at *6 (W.D. Wash. June 15, 2011) is misplaced.  In *Mittlestadt*, the Court
noted that "[w]hen a mental illness is involved, assuming that a failure to comply
with prescribed treatment suggests a willful failure to comply with prescribed
treatment can be illogical. This is in part because a person suffering from a mental
illness may not realize that he needs his medication, or he may not even realize that
his 'condition reflects a potentially serious mental illness.'" *Id.* at *6.  The case at
hand, however, is clearly distinguishable as Plaintiff did not seek benefits based
upon a mental illness and has pointed to no medical records reflecting that she
suffers from a serious mental illness.

"Midwest" in October 2011 (R. at 581), and Plaintiff's first missed appointment was not until December 2011. (R. at 438.) Plaintiff does not address the notation in the record that she had insurance in October 2011, which is prior and in close proximity to when she began missing appointments. There is no record of her becoming uninsured between October and December of that year, or at least none that has been pointed out to this Court or which was highlighted to the ALJ.

Finally, as the Commissioner notes, Plaintiff's missed appointments was only one of the reasons the ALJ found Plaintiff's credibility to be diminished. For example, the ALJ also relied upon how Plaintiff's testimony about her activities of daily living at the hearing conflicted with the function reports prepared by both Plaintiff and her fiancé. Thus, "[s]imply [put], plaintiff's lack of treatment was not a 'determinative factor' in assessing plaintiff's credibility, but was properly considered by the ALJ." *Lee v. Comm'r of the Soc. Sec. Admin.*, 2015 WL 4394275, at *13 (E.D. Mich. June 30, 2015) (Hluchaniuk, M.J.), *report and recommendation adopted at* 2015 WL 4394275, at *1 (Murphy, J.). Because the ALJ's credibility conclusion, including the remarks about Plaintiff's missing appointments and her insurance coverage, is supported by substantial evidence, it should not be disturbed.

### G.   CONCLUSION

In sum, from a review of the record as a whole, the Undersigned concludes that substantial evidence supports the ALJ's decision denying benefits to Plaintiff. Accordingly, it is **RECOMMENDED** that the Court **DENY** Plaintiff's motion for summary judgment (DE 13), **GRANT** Defendant's motion for summary judgment (DE 16), and **AFFIRM** the Commissioner of Social Security's decision.

### III.   PROCEDURE ON OBJECTIONS

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991).  Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Sec'y of Health & Human Servs.*, 932 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1273 (6th Cir. 1987).  Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," and "Objection No. 2," *etc.*  Any objection must recite precisely the provision of this Report and

Recommendation to which it pertains.  Not later than 14 days after service of an

objection, the opposing party may file a concise response proportionate to the

objections in length and complexity.  Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR

72.1(d).  The response must specifically address each issue raised in the objections,

in the same order, and labeled as "Response to Objection No. 1," "Response to

Objection No. 2," *etc.*  If the Court determines that any objections are without

merit, it may rule without awaiting the response.


Dated: February 10, 2017                    s/Anthony P. Patti
                                            Anthony P. Patti
                                            UNITED STATES MAGISTRATE JUDGE


I hereby certify that a copy of the foregoing document was sent to parties of record
on February 10, 2017, electronically and/or by U.S. Mail.

                                            s/Michael Williams
                                            Case Manager to the
                                            Honorable Anthony P. Patti